[Civ. No. 53296. First Dist., Div. Two. Sept. 1, 1983.]

FIRST CORPORATION, INC., Plaintiff and Appellant, v.
COUNTY OF SANTA CLARA et al., Defendants and Respondents.

COUNSEL

Marinos, Styn & Studebaker and Jeffrey N. Garland for Plaintiff and Appellant.

Selby Brown, Jr., County Counsel, and Byron T. Athan, Deputy County Counsel, for Defendants and Respondents.

OPINION

**MILLER, J.**—When real property is sold by the state for nonpayment of taxes, the proceeds of the sale are first applied to the costs of the sale and

to the unpaid tax assessments. Any excess remaining after satisfaction of those amounts may be claimed by the former owners of the property. This appeal presents a single question: If the sole claimant to the excess proceeds is a party who had only a fractional ownership interest in the property before its sale by the state, is that party entitled to the entire excess, or only part of it?

The facts in this case are undisputed. Plaintiff and appellant First Corporation is the assignee of Loraine Powers, who had owned a one-seventh interest in a particular parcel of real property. That parcel was sold at a public tax sale on February 18, 1978, for $8,789.69 more than the delinquent taxes, interest and penalties on the secured roll for that property. Appellant filed a timely claim for the excess proceeds pursuant to Revenue and Taxation Code sections 4674 and 4675[1] and was the sole claimant to the excess proceeds. Respondent Board of Supervisors of the County of Santa Clara approved appellant's claim in the amount of $1,259.67 only, which represents one-seventh of the excess proceeds.

Appellant petitioned for a writ of mandate to compel the board of supervisors to pay it the whole amount of the excess. That petition was denied by the superior court, and this appeal followed.

Section 4674 provides that the excess proceeds remaining after the unpaid tax assessments on the property and certain other charges are paid shall be held on account of the parties of interest in the property. Such proceeds may be claimed by the "parties of interest," as defined in section 4675. Any excess proceeds which are unclaimed within one year of the tax sale are to be distributed to the taxing agencies which had unpaid assessments against the property.[2]

When appellant filed its claim for the excess proceeds, section 4675 required that the excess proceeds be distributed to parties of interest who had filed timely claim for them.[3]

---

[1] All statutory references are to the Revenue and Taxation Code unless otherwise indicated.

[2] Section 4674 provides: "Any excess in the proceeds deposited in the delinquent tax sale trust fund remaining after satisfaction of the amounts distributed under Sections 4672, 4672.1, 4673 and 4673.1 shall be retained in such fund on account of, and may be claimed by parties of interest in the property as provided in, Section 4675. At the expiration of one year following the execution of the tax deed to the purchaser, any excess proceeds not claimed under Section 4675 shall be distributed as provided in paragraph (2) of subdivision (a) of Section 4673.1."

[3] Effective January 1, 1979, section 4675 provided, in relevant part: "Any party of interest in the property at the time of sale by the state may file with the county a claim for the excess proceeds at any time prior to the expiration of one year following the execution of the tax

The distribution of excess proceeds to claiming parties of interest is a fairly recent legislative innovation. Before January 1, 1977, former section 4674 provided that all excess proceeds were to be distributed to the taxing agencies which had had unpaid assessments against the property. (Stats. 1974, ch. 1102, § 2, p. 2352.) The parties of interest had no rights in the excess proceeds. (*Chesney* v. *Gresham* (1976) 64 Cal.App.3d 120, 131 [134 Cal.Rptr. 238].)

■ Appellant raises two contentions to support its claim to the entire excess proceeds. First, it contends that section 4675 "clearly requires distribution of all excess proceeds" to it as a claimant under subdivision (b) of section 4675. Second, it claims that certain public policy considerations compel distribution of the entire excess proceeds to it.

We disagree with appellant's contentions and affirm the judgment below.

There is language in section 4675 which indicates that both partial and total distributions of the excess proceeds to claimants were contemplated by the Legislature when it enacted the statute.[4] This language does not, by itself, indicate the basis on which the appropriate distribution will be determined. There is other language, however, which does define appellant's rights in this case.

Section 4674 says that the excess proceeds shall be deposited in the delinquent tax sale fund "on account of, and may be claimed by" the parties of interest. Section 4675 says that excess proceeds shall be distributed only to the parties of interest who have claimed them.

---

collector's deed to the purchaser. . . . [¶] *The claims shall contain any information and proof deemed necessary by the board of supervisors to establish the claimant's rights to all or any portion of the excess proceeds.* [¶] No sooner than one year following the execution of the tax collector's deed to the purchaser, and if the excess proceeds have been claimed by any party of interest as provided herein, such excess proceeds shall be distributed *only to those parties of interest who have claimed such excess proceeds* on order of the board of supervisors to the parties of interest *who have claimed such excess proceeds* in the order of priority set forth in subdivisions (a) and (b). For the purposes of this article, parties of interest and their order of priority are: [¶] (a) First, lienholders of record prior to the property becoming tax deeded to the state or to any other taxing agency, in the order of their priority, as to liens that were extinguished by the issuance of the deed to the state; and [¶] (b) Then, any person who would be established with title to all or any portion of the property sold by the state by redemption of such property immediately prior to the sale by the state. [¶] In the event more than one party of interest, as defined in subdivisions (a) and (b) of this section, files claims for the excess proceeds as provided herein, the board of supervisors shall give all claimants opportunity for a hearing to establish the priority and extent *of their claim* . . . ." (§ 4675, added Stats. 1976, ch. 113, § 6, p. 177, italics added; italicized words added Stats. 1978, ch. 1084, § 5, p. 3317.)

[4] "The claims shall contain any information and proof . . . necessary . . . to establish the claimant's rights to all or any portion of the excess proceeds." (§ 4675.)

We hold that the parties' rights to the excess proceeds are created at the moment when the tax-delinquent property is sold by the state for an amount greater than the assessments on the property, and the excess proceeds come into existence.

"Claim" is defined as "to demand delivery of [something] by or as if by right." (Webster's Third New Internat. Dict. (1970) p. 414.) It has also been said that " 'Claim' in its primary meaning, is used to indicate the assertion of an *existing right.*" (*Mellus* v. *Potter* (1928) 91 Cal.App. 700, 704 [267 P. 563], italics in original.) The parties of interest therefore have a right to some share of the excess proceeds when the excess proceeds come into existence. The making of a claim for them is merely a request for their distribution on the basis of an existing right to them.

Inasmuch as the parties have a right to the proceeds even without claiming them, the question is who should succeed to these rights in the absence of their assertion by the filing of a claim.

The right to receive the proceeds and to claim them is property because it is an obligation which may be possessed and used to the exclusion of others. (Civ. Code, §§ 654, 655.)

A review of statutory provisions dealing with unclaimed property reveals a general rule that when rights to property are simultaneously created in several parties, the claiming parties do not succeed to the rights of the nonclaiming parties.

Property which is distributable in the course of the liquidation or dissolution of a business, and which is unclaimed by the owner within six months after the date of final distribution or liquidation, escheats to the state. (Code Civ. Proc., § 1517.) This means that shareholders in a corporation which is in liquidation have neither a right to unclaimed amounts owing to creditors, nor a right to the assets distributable to, but unclaimed by, other shareholders of the same class.

Similarly, a "dividend, profit [or] distribution . . . held or owing by a business association for or to its shareholder, . . . member, . . . or other security holder, or a participating patron of a cooperative," if unclaimed by the person to whom it is due, escheats to the state. (Code Civ. Proc., § 1516, subd. (a).) Thus, an unclaimed dividend payable to a shareholder is available neither to the business itself, nor to the other shareholders who claimed the dividends which were declared on their shares.

Unclaimed property "held in a fiduciary capacity for the benefit of another person" escheats to the state if it remains unclaimed for seven years after it becomes payable. (Code Civ. Proc., § 1518, subd. (a).) This would arguably apply in a situation where the terms of a trust instrument required the trustee to make periodic, identical payments to each member of a class of beneficiaries. If one beneficiary failed to claim the payments due her, those unclaimed payments would neither be returned to the corpus of the trust, nor be divided among the beneficiaries who had claimed their payments.

If the entire balance of an estate is not distributed to known heirs, legatees or devisees entitled to succeed to it, the probate court must distribute the undistributed portion to the state. Any such property which is unclaimed after five years vests absolutely in the state. (Prob. Code, § 1027.) It is not available for distribution to others who shared in the estate.

In *Estate of Costa* (1952) 109 Cal.App.2d 735 [241 P.2d 621], the decedent died intestate, leaving two savings accounts. The savings account balances were deposited in the state treasury. A great-nephew appeared and claimed those funds. The decedent had left neither descendants, ancestors nor spouse. He had five siblings, only one of whom, the claimant's grandmother, was known to have come to the United States from their birthplace in the Azores. Since the decedent's heirs, aside from the claimant's grandmother and her line, were nonresident aliens who had never appeared to claim their shares, the court held that their shares passed to the state, and the claiming great-nephew was entitled to only one-fifth of the amount on deposit with the state. (*Id.*, 109 Cal.App.2d at pp. 741-742.)

The principle common to all of these situations leads us to the conclusion that the other parties of interest under subdivision (b) of section 4675 were entitled to a share of the excess proceeds in proportion to their former ownership interest in the tax-delinquent property. Their ownership of a share of the excess proceeds was created when the excess proceeds came into existence. When they failed to file claims in assertion of their existing rights, appellant did not succeed to their rights.

Appellant's second contention does not compel a different interpretation of the statute.

Appellant argues that the public policy, as embodied in the 1976 amendment of section 4674 and enactment of section 4675, dictates that the proceeds should be distributed to parties of interest, and not to the taxing agencies, whenever possible. This interpretation is incorrect. The statutory

amendments do not create a presumption that the excess proceeds must be distributed to parties of interest if any means can be found to do so. Rather, they provide that the taxing agencies shall not take any portion of the excess proceeds which are properly claimed by the parties of interest.

Nor may appellant take the entire excess proceeds to protect the rights of "unknown partial interest holders." The statute specifies that a party's right may be asserted only by that party or its assignee. Appellant is the assignee of the rights of one who had owned a one-seventh undivided interest in the property. Appellant may assert only the rights arising out of the former one-seventh interest.

Appellant's argument that the lapse of rights through failure to assert them works an escheat, is incorrect. Property can "escheat" only to the state, and not to local governments. (Code Civ. Proc., § 1300, subd. (c).)

The judgment is affirmed.

Kline, P. J., and Rouse, J., concurred.