[Civ. No. 21789.   First Dist., Div. Two.   Nov. 16, 1964.]

THOMAS J. O'CONNELL, Plaintiff and Appellant, v. MERRILL LYNCH, PIERCE, FENNER AND SMITH, INCORPORATED, Defendant and Respondent.

Thomas J. O'Connell, in pro. per., for Plaintiff and Appellant.

Long & Levit, Bert W. Levit, David R. Harrison and Dennis M. Day for Defendant and Respondent.

AGEE, J.—Plaintiff appeals from a summary judgment in favor of defendant. The facts set forth in the following paragraph are not in dispute.

Defendant is a stockbroker with whom plaintiff maintained a margin account; in early August 1960\* defendant sold short for plaintiff's account 4,000 shares of Studebaker-Packard common stock at $8.50 to $8.625 per share; on August 17 the price of the stock rose to $9.50 per share; under existing regulations, of which plaintiff claims he was then unaware, defendant was required either to obtain additional margin from plaintiff or to liquidate said account to the extent necessary to raise the credit balance in the account to the required level; on August 18 the market opened at $9.75 per share and the short sale could then have been covered for $39,000 ($9.75 × 4,000); on August 31 defendant sent plaintiff a telegram demanding additional margin; on September 1 the market opened at $13 per share and the cost of covering the short sale had accordingly risen to $52,000 ($13 × 4,000); plaintiff seeks damages of $13,000 for this loss of equity in his account ($52,000 minus $39,000) during the period of August 18 to September 1.

The gravamen of plaintiff's cause of action, as alleged in his complaint, is that defendant's account executive, one de Urioste, had negligently understated the amount of margin required to be maintained in his account and thereby ''created in the mind of plaintiff a delusion of safety from forced liquidation of said account''; that defendant ''perpetuated the delusion by negligently failing to send plaintiff a demand for additional margin on August 17, 1960, and by continuing to fail to send plaintiff a demand for more margin until August 31, 1960, at which time defendant sent plaintiff a telegram demanding $12,116.00, which telegram was received by plaintiff on the night of August 31, 1960''; that his ''first opportunity to cover the short sale after receiving said telegram was on the morning of September 1, 1960, when the price of said stock opened on the New York Stock Exchange at $13.00 per share.''

It may be noted parenthetically that defendant would never have had to use any of its own funds in order to cover the sale, since plaintiff had a credit balance of $57,884.66 in his margin account (also $1,832.19 in his cash account) with

---

\*All dates are in the year 1960 unless otherwise indicated.

defendant and the price of the stock did not at any time relevant herein exceed $13.875 per share.

Plaintiff appears herein in propria persona and his pleadings are not very well stated. However, defendant has not been misled as to the theory of plaintiff's cause of action. This is indicated by defendant's statement in its brief to the court below that plaintiff "claims that if he had not been misinformed about the margin requirements, or if he had received notice of the need for margin on 17 August 1960, he would have covered the entire 4000 shares of stock short in his account on 18 August 1960, at a price of 9¾ per share."

In its brief on appeal defendant again recognizes that plaintiff's claim is that if plaintiff "had known of the margin requirements, or had received a margin call on or before 17 August 1960, he would have covered his entire short sale of 4000 shares at a price of 9¾ at the opening of the market on 18 August 1960 . . . ."

Our reason for stressing defendant's awareness that plaintiff limits his claim of actionable wrong to the period commencing on August 17 and terminating with the sending of the telegram on August 31 is that defendant's motion for summary judgment appears to be directed, with only one exception, to events occurring *after* the opening of the market on September 1.

Defendant's motion for summary judgment alleges that it is based upon the ground that "plaintiff's action has no merit." (Code Civ. Proc., § 437c.) It is supported by the declarations under penalty of perjury of Kenneth R. Rearwin, one of defendant's vice-presidents, and David R. Harrison, one of defendant's attorneys.

Rearwin's declaration states that "on 31 August 1960, defendant sent by telegram a notice to plaintiff that $12,116 margin was needed for his account"; that on "1 September 1960, plaintiff came into defendant's Montgomery Street office and, because the price of the stock had risen to 13¾, was presented with a revised margin call for $16,000"; that plaintiff thereafter made a number of misrepresentations as to his financial ability to put up more margin, which resulted in inducing defendant not to start covering any part of the short sale until September 13; that the covering of the short sale was finally completed on November 30.

Harrison's declaration is directed to plaintiff's testimony in his deposition, taken on August 27, 1962, to the effect that,

although plaintiff claimed that he would have covered his entire short sale of 4,000 shares at a price of $9.75 to $10 per share if he had received a margin call on August 17, 1960, he admitted that, on September 1, he had total assets of only $150 and no insurance on which he could raise the amount of the margin call; that he did not on September 1 make any objection as to the manner in which his margin account had been handled; that when he gave defendant a second check for $8,000 on September 6, he knew that he did not have sufficient funds to cover either check.

Thus, neither of the declarations offered by defendant in support of its motion for summary judgment attempts to controvert plaintiff's claims that defendant's account executive (de Urioste) had negligently misrepresented the margin requirements or that defendant negligently failed to send a margin call until August 31. Defendant acknowledges that these claims, although denied in its answer to plaintiff's complaint, must be taken as true ''for the purpose of this appeal.'' No reason is given by defendant as to why its declarations did not put in issue these claims made by plaintiff. No explanation is offered as to why its account executive, de Urioste, has not denied the alleged misrepresentation as to the amount of margin required to be maintained by plaintiff.

Defendant lists six incidents as ''the only factual disputes'' on appeal and characterizes each as ''a complete sham.'' Only *one* of these refers to anything which occurred *before* September 1 and this concerns the net amount to be credited to plaintiff's account as the result of the original short sale in early August. Plaintiff failed to debit himself with the commission and taxes (approximately $700) charged against this sale. However, plaintiff correctly alleges in his complaint that on August 8, 1960, after such short sale had been completed, the credit balance in his margin account was $57,884.66. Defendant agrees with this figure. Thus plaintiff corrected his oversight and no actual dispute exists in this respect.

The remaining five ''disputed facts'' relate to acts and statements of plaintiff on and after September 1 with respect to his efforts to raise more margin. None of these incidents have any bearing on the determinative issues involved on this appeal.

Plaintiff's counteraffidavit adds little if anything which is relevant to the issue before us. It concerns itself principally

with his reasons and excuses for not putting up more margin when called upon to do so.

We prefer to base our decision herein upon the ground that the defendant's declarations, construed strictly as they must be, are insufficient to justify the granting of a summary judgment. (See *Southern Pac. Co.* v. *Fish*, 166 Cal.App.2d 353, 364 [333 P.2d 133] ; *de Echeguren* v. *de Echeguren*, 210 Cal. App.2d 141, 147-149 [26 Cal.Rptr. 562].) ▉ As stated in *de Echeguren*, at page 147: "It is therefore well settled that summary judgment cannot be ordered for the moving party, even though the affidavits of the opposing party be insufficient or absent, unless the moving party presents affidavits in support of his motion which comply with the statute and show that he is entitled to judgment." (Numerous citations.)

Defendant also discusses the proper measure of damages applicable to this case, pointing out that, even if plaintiff had covered the short sale on August 18, he would have suffered a loss of $5,555.73; whereas, defendant continues, when the transaction was closed on November 30, the loss had increased to only $10,706.73. (The stock had gone down to $7.50 per share by that time.) Defendant concludes that "The maximum recovery to which O'Connell [plaintiff] might be entitled, therefore, would be $5,151.00 ($10,706.73 minus $5,555.73)."

The measure or amount of damages is not before us at this time. The issue on appeal is whether there has been a sufficient showing that plaintiff has in fact no basis for a recovery from defendant in *any* amount. We have concluded that defendant has not made such showing.

Judgment reversed and the cause remanded for trial.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied December 16, 1964.